IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RHONDA J. FAGAN,<br><br>   Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner, Social Security<br>Administration,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. CIV-05-174-F<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security Administration (Commissioner) denying her application for disability insurance benefits. Pursuant to an order entered by United States District Judge Stephen P. Friot, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter Tr. _____). Both parties have briefed their respective positions, and thus the matter is at issue. For the reasons stated herein, the undersigned recommends that the decision of the Commissioner be affirmed.

### I. PROCEDURAL HISTORY

Plaintiff filed her application for disability insurance benefits on November 4, 2002, with a protective filing date of September 20, 2002, alleging disability as of December 20, 2001. Tr. 89-91, 98. The application was denied on initial consideration and on reconsideration at the administrative level. Tr. 55, 56, 57-59, 61-62. Pursuant to Plaintiff's request, a hearing de novo was held before an administrative law judge on

August 12, 2004.[1] Tr. 63, 179-211. Plaintiff appeared in person with counsel, and offered testimony in support of her application. Tr. 181-201. A vocational expert also testified at the request of the administrative law judge. Tr. 80, 202-09. The administrative law judge issued his decision on August 27, 2004, finding that Plaintiff was not disabled within the meaning of the Social Security Act and that she was thus not entitled to benefits. Tr. 43-45, 46-53. The Appeals Council denied Plaintiff's request for review on December 9, 2004, and the decision of the administrative law judge became the final decision of the Commissioner Tr. 5-8.

## II. STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> We review the agency's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. The agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal. Finally, because our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight. However, we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and citations omitted). The Commissioner follows a five-step sequential evaluation process

---

[1] A hearing was originally scheduled for June 24, 2004, and was rescheduled until August 12, 2004, so as to permit Plaintiff to obtain representation. Tr. 181.

to determine whether a claimant is disabled. Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. Id. at 751, n. 2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy, given her age, education, and work experience. Id. at 751.

### III. THE ADMINISTRATIVE LAW JUDGE'S DECISION

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 404.1520. Tr. 47. He found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 47, 52. At steps two and three, the administrative law judge found that Plaintiff suffers from obesity, hyperalimentation and polycystic ovary syndrome, impairments that are "severe," but not severe enough to meet or equal any of the impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations, No. 4. Tr. 48, 52. He next found that Plaintiff has the residual functional capacity to perform a significant range of light work, limited by her ability to only occasionally perform all postural activities. Tr. 50, 52. The administrative law judge concluded that with this residual functional capacity Plaintiff could not perform her past relevant work as a nurse assistant or certified medication technician. Tr. 50, 52.[2] However, based upon Plaintiff's residual functional capacity and vocational factors, the

---

[2] The administrative law judge referred to the past relevant work as a nurse's aide and medical assistant (Tr. 50), but the vocational expert described it as nurse assistant and certified medication technician. Tr. 202.

administrative law judge found that there were light and sedentary jobs that Plaintiff could perform, such as meter reader, waitress, order clerk, censor service operator, and parimutuel ticket checker, which exist in significant numbers in the national economy.[3] Tr. 51, 52. Thus, the administrative law judge found that Plaintiff was not disabled and was not entitled to benefits. Tr. 51-53.

## IV. ANALYSIS

### A. MEDICAL RECORDS

On July 10, 2002, more than six months after her alleged onset date, Plaintiff saw Mark S. McKinnon, M.D., for the first time. Tr. 147. She complained to Dr. McKinnon about headaches, inexplicable weight gain, pelvic pain, excessive hair growth, and trouble swallowing. Tr. 147. Plaintiff weighed 328 pounds. Tr. 147.

Plaintiff underwent a pelvic ultrasound on July 15, 2002, at which time cysts were noted on her ovaries. Tr. 151. On July 24, 2002, Plaintiff followed up with Dr. McKinnon, who noted the results of her ultrasound, a weight gain of 16 pounds in two weeks, and symptoms of reflux and opined that she had both reflux and perhaps polycystic ovary syndrome. Tr. 146.

Plaintiff was seen at the endocrinology clinic by Stephanie Addington, M.D. on September 27, 2002. Tr. 134-36. Plaintiff complained of forgetfulness, fatigue, heat intolerance and pedal edema. Tr. 136. Dr. Addington noted a history of polycystic ovary

---

[3] It appears from the hearing transcript that the vocational expert actually testified that Plaintiff could perform the job of answering service operator, not censor service operator. Tr. 203.

syndrome and indicated that certain conditions should be ruled out, including Cushing's disease and thyroid problems. Tr. 136.

On October 24, 2002, Plaintiff was seen by Lee P. Frye, M.D., an obstetrician/gynecologist, after referral by Dr. McKinnon. Tr. 137. Dr. Frye noted Plaintiff's ovarian cysts, her pain and her irregular periods. Tr. 137. He noted some depression. Tr. 137. He noted a hernia in her abdomen, and recommended that she see a general surgeon. Tr. 137. Dr. Frye suggested that Plaintiff had scar tissue, polycystic ovarian syndrome or endometriosis causing her menstrual difficulties and pain and started her on hormone replacement therapy and Anaprox. Tr. 137. On November 14, 2002, Plaintiff returned to Dr. McKinnon complaining of abdominal pain. Tr. 144. She informed Dr. McKinnon that Dr. Frye had diagnosed a hernia, but he could find no protrusion of the abdominal wall. Tr. 144. She complained of headaches and was prescribed Amerge. Tr. 144.

There is no evidence of additional medical contacts until June 12, 2003, when Plaintiff presented to Todd Clapp, M.D., with complaints of right upper extremity pain. Tr. 176. She complained of weakness in her right hand and stated that although she had similar problems for years, this was a more intense pain. Tr. 176. She was positive for Phalen's sign. Tr. 176. Dr. Clapp noted complaints from Plaintiff's prior visit, for which there are no records, at which time she was prescribed Effexor. Tr. 176. He diagnosed nerve compression, daytime somnolence and an umbilical hernia, something else noted from a prior visit for which the Court lacks documentation. Tr. 176

On September 11, 2003, Plaintiff was seen by Dr. Clapp for complaints of left shoulder pain. Tr. 174.[4] He noted a flat affect and depressed mood. Tr. 174. He noted decreased range of motion around the left shoulder, particularly when raising her arm over her head. Tr. 174. Dr. Clapp again diagnosed nerve compression, although he noted that objective findings were "somewhat lacking." Tr. 174. He also concluded that conservative therapy had not been helpful. Tr. 174. He recommended limiting repetitive motion and use of that arm. Tr. 173. He was going to send her to a neurologist for evaluation. Tr. 173-74.

Plaintiff returned to Dr. Clapp complaining of a rash on March 24, 2004. Tr. 178. She also complained about urinary incontinence. Tr. 178. Dr. Clapp noted that Plaintiff was alert and in no acute distress. Tr. 178. On April 23, 2004, Plaintiff returned to Dr. Clapp and complained about pain in her right calf. Tr. 172. Dr. Clapp described Plaintiff as alert and mildly uncomfortable, but in no acute distress. Tr. 172. He diagnosed muscle strain/Achilles tendinitis. Tr. 172. He noted that her obesity contributes to the episodes and prescribed pain medication. Tr. 171-72.

On June 4, 2004, Plaintiff presented to Dr. Clapp with a several-month history of frequent menstrual flow. Tr. 170. She reported that she was being seen by a neurologist, although there are no treatment records from any such physician included in the record. Tr. 170. Plaintiff was alert, with a flat affect. Tr. 170. Dr. Clapp diagnosed Plaintiff with

---

[4] At one point in the report, it is indicated that Plaintiff was there for a follow-up on her right shoulder, but within the body of the report, it is reported as left shoulder and arm pain. Tr. 174.

menorrhagia, of unknown etiology and possible hydrocephalus, as reported by Plaintiff. Tr. 170. He referred her to an obstetrician/gynecologist. Tr. 170.

On June 16, 2004, Plaintiff underwent lumbar series x-rays, which showed grade I forward displacement of L5 with respect to S1. Tr. 167. Certain anatomic detail was obscured due to the patient's size, and pars interarticularis defects could not be excluded at L5-S1. Tr. 167.

On July 8, 2004, Plaintiff was seen by Dr. Clapp for complaints of arm and back pain, as well as for a mole on her back. Tr. 168. Dr. Clapp noted that her arm pain was likely ulnar neuropathy, made worse by pressure. Tr. 168. However, her arm was essentially normal to exam in both strength and neurovascular function Tr. 168. He advised that she limit her repetitive motion. Tr. 168. Dr. Clapp assessed that Plaintiff has chronic back pain, aggravated by her weight, and noted her inability to receive physical therapy because of insurance. Tr. 168.

## A. ISSUES ON APPEAL

Plaintiff raises two issues on appeal. First, she claims that the administrative law judge failed to properly consider her obesity. Plaintiff's Opening Brief, p. 8-11. Second, she claims that substantial evidence does not support the administrative law judge's conclusion that she can perform a full range of light work limited only by occasional postural restrictions. Plaintiff's Opening Brief, p. 11-13.

## B. DISCUSSION

### 1. Plaintiff's Obesity

In her first argument, Plaintiff claims that the administrative law judge failed to properly consider her obesity in assessing her limitations. Plaintiff contends that although the administrative law judge acknowledged her obesity, that he failed to discuss how he considered her obesity in conjunction with her other medically determinable impairments. Additionally, Plaintiff argues that she would have been disabled pursuant to the Commissioner's prior regulations based solely on her weight, a factor that the administrative law judge should have considered. Because Plaintiff's argument touches on different steps in the administrative law judge's sequential analysis, the undersigned will consider the arguments regarding obesity as they relate to each step of the sequential analysis.

The Commissioner acknowledges that obesity is a complex, chronic disease characterized by excessive body fat. Social Security Ruling 02-1p, 2000 WL 628049 at *6. Obesity may lead to other health problems, including, cardiovascular disease, diabetes, sleep apnea and depression. Id. at *3. Until October 25, 1999, obesity was a separate listed impairment. Id. at *1. During the relevant time period for this case, however, obesity has not been a separate impairment. Accordingly, the fact that Plaintiff has a Body Mass Index of 60 was not a determining factor in this case, and the administrative law judge was not obligated at any step of the sequential analysis to discuss the fact that under the prior regulations Plaintiff would have been disabled solely by virtue of the ratio between her height and her weight.

The 1999 rule promulgated by the Social Security Administration that deleted the obesity listing was premised on the fact that the criteria therein, namely Body Mass Index, "did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity." Social Security Ruing 02-1p, 2000 WL 628049, *1. Although not a listing, obesity itself may be medically equivalent to a listed impairment at step three of the sequential analysis. Plaintiff addresses this briefly, without citation to any specific listing in the musculoskeletal system listings that she believes she meets by virtue of her obesity. Plaintiff's Opening Brief, p. 10.

As noted, although Body Mass Index is no longer the deciding factor in determining a claimant's disabled status, obesity can be the equivalent of a listing.

> For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence.

Social Security Ruling 02-1p, 2000 WL 628049, * 5. Section 1.00B2b(1) defines the inability to ambulate effectively "generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Plaintiff clearly did not meet this standard by virtue of her obesity.

Section 1.00B2b(2) provides that "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. . . . [E]xamples of ineffective ambulation include . . . "the inability to walk a block at a reasonable pace on rough or uneven surfaces." Section

1.00B2b(2). At step three of the sequential analysis the claimant bears the burden of proof, and the record is devoid of any inability by Plaintiff to ambulate effectively for a block. The testimony at the hearing indicated that Plaintiff had trouble walking from her car to the hearing, although there was no testimony about the actual distance and whether the trip required Plaintiff to climb stairs. Tr. 192. Additionally, in her disability reports Plaintiff did not report that she could not walk a block, indicating throughout that being on her feet for a very long time and walking for long periods of time were problematic. Tr. 116, 118, 120, 121. There is no medical evidence to suggest that Plaintiff is unable to ambulate effectively, and the administrative law judge did not err in finding that Plaintiff did not meet a listing at step three solely on the basis of her obesity.

Plaintiff also argues that the administrative law judge failed to fully consider her obesity.

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural limitations, such as climbing, balance, stooping, and crouching....

Social Security Ruling 02-1p, 2000 WL 628049, *6. As noted above, the administrative law judge found that Plaintiff's obesity and her polycystic ovary syndrome were severe impairments.[5] Tr. 48. Plaintiff contends that the administrative law judge did not note

---

[5] The symptoms of polycystic ovary syndrome include: infrequent menstrual periods, no menstrual periods, and/or irregular bleeding; infertility; increased growth of hair on the face, chest, stomach, back, thumbs, or toes; acne, oily skin, or dandruff ; pelvic pain; weight gain or obesity, usually carrying extra weight around the waist; type 2 diabetes; high cholesterol; high blood pressure; male-pattern baldness or
(continued...)

the limitations caused by her obesity. However, the postural limitations included by the administrative law judge in his residual functional capacity assessment and the fact that he limited her to light and sedentary work belie Plaintiff's argument. In short, the administrative law judge considered Plaintiff's obesity and determined that it limited her functional abilities, but Plaintiff objects because the limitations he imposed are less severe then the limitations that she believes are appropriate.

The administrative law judge reviewed the medical evidence and concluded that because of her obesity and pain that Plaintiff could only occasionally climb, balance, stoop, kneel, crouch and crawl. Tr. 49-50. The administrative law judge imposed these limitations even though none of Plaintiff's treating physician had ever imposed any such restrictions. Furthermore, these restrictions were the same as those imposed by the agency's medical consultants who reviewed Plaintiff's medical records. Again, no treating physician ever included any functional limitations on Plaintiff's abilities to walk, stand and sit or on her postural abilities. The administrative law judge considered Plaintiff's obesity in conjunction with her other medical conditions, thereby fulfilling his obligations under Social Security Ruling 02-01p.[6]

---

[5](...continued)
thinning hair; patches of thickened and dark brown or black skin on the neck, arms, breasts, or thighs; skin tags; and sleep apnea. See Women's Health.gov, http://www.4woman.gov/faq/pcos.htm#5. According to the record Plaintiff's biggest concerns with her polycystic ovary syndrome were pain and irregular menstrual bleeding. The irregular menstrual cycles do not appear to implicate any functional limitations. Tr. 185. Of course pain may cause non-exertional limitations.

[6] Plaintiff argues that the administrative law judge failed to consider whether her obesity in conjunction with her other impairments met the equivalency of a listing. Plaintiff asserts that the mere fact that she can ambulate without an assistive device does not preclude a finding that she met the listing at 20 C.F.R. Pt. 404, SubPt. P, App. 1 § 1.00. Plaintiff's Opening Brief, p. 10. Although § 1.00 defines the ability to ambulate effectively in the general introductory section to specific listings, Plaintiff does not argue that
(continued...)

## 2. Plaintiff's Residual Functional Capacity

In her second allegation of error Plaintiff contends that the administrative law judge erred in failing to address certain of her alleged medical conditions. Specifically, Plaintiff contends the administrative law judge should have discussed her sleep apnea, her possible mental impairment and her claim that it was believed that she suffered from hydrocephalus.[7] Additionally, Plaintiff challenges the administrative law judge's failure to include a limitation in the repetitive use of her right arm in his residual functional capacity, a limitation recommended by her treating physician. Finally, Plaintiff alleges that the administrative law judge should have ordered a consultative examination.

An administrative law judge must follow certain steps in the evaluation of a treating doctor's opinion. <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003) An administrative law judge should articulate the weight, if any, he gave to a treating physician's opinion and should give reasons for assigning that weight or for rejecting the opinion altogether. Plaintiff complains that the administrative law judge ignored the limitation imposed by her treating physician, Dr. Clapp, with regard to her ability to use her arms.

---

[6](...continued)
she actually meets one of the listed impairments of the musculoskeletal system, listings 1.01 through 1.13. However, according to Social Security Ruling 02-1p, obesity by itself may be equivalent to a listed impairment. The example given by the Ruling indicates that if it results in an inability to ambulate effectively it may substitute for a major dysfunction of joints. Social Security Ruling 02-1p, 2000 WL 628049, *5.

[7] At the time of the hearing before the administrative law judge, Plaintiff had undergone an MRI, on her head, but had not yet received the results. Tr. 186.

12

During 2003 and 2004, Plaintiff complained of upper extremity pain, first in her right arm, then in her left, and then again in her right arm. Tr. 168,174, 176.[8] Plaintiff's treating physician, Dr. Clapp opined that the pain was likely caused by a pinched nerve, although he could not determine the location of the problem. Tr. 174, 176. He recommended on two occasions that she limit her repetitive arm motion. Tr. 168, 173. In assessing Plaintiff's residual functional capacity, the administrative law judge noted Dr. Clapp's September 11, 2003 recommendation, but he did not include any such limitation in his residual functional capacity, nor did he undertake any analysis of Dr. Clapp's opinion in deciding to ignore the limitation. Tr. 49. However, the administrative law judge's failure does not require remand in this case, because the administrative law judge specifically asked the vocational expert if the jobs identified by him and adopted by the administrative law judge require repetitive motion with the arms, and the answer was no. Tr. 204. Thus, even if the administrative law judge had adopted the limitation, the outcome would not have been implicated. See Bernal v. Bowen, 851 F.2d 297, 302 (10th Cir.1988) (finding no reversible error in the non-compliance with the regulations and statute, when the claimant was not prejudiced thereby); see also Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (harmless error analysis may be appropriate to supply a missing dispositive finding); Montgomery v. Shalala, 30 F.3d 98, 100 (8th Cir.1994) (suggesting that, despite mandatory language of the regulations, courts may find the omission harmless under particular circumstances).

---

[8] As noted previously, the medical report which reflects Plaintiff's complaints of pain in her left shoulder, also refers to the right shoulder. Tr. 174. Thus, it is not clear if the report pertains to the right or left shoulder.

Plaintiff also complains about the administrative law judge's treatment of certain of her conditions, specifically an alleged hernia, hydrocephaly and sleep apnea. With regard to the alleged hernia, a diagnosis of a hernia was made by Dr. Frye, who suggested that Plaintiff contact a general surgeon. Tr. 137. There is no indication that any such contact was made, and at her next appointment with Dr. McKinnon he noted that there was no protrusion of the abdominal wall but he ordered a CT scan of the abdomen and pelvis to look for herniation. Tr. 144. There are no additional records from him to confirm the presence of a hernia. At the hearing Plaintiff made no mention of the hernia, and her complaints to her treating physician throughout the record are silent on the issue other than the two references mentioned above. Plaintiff failed to meet her burden of establishing the existence of a hernia, and therefore the administrative law judge's failure to attribute any limitations to a hernia was not error.

Plaintiff testified that she was seeking treatment for possible hydrocephalus, although there are no medical records from treating physicians to support any finding that Plaintiff suffered from this condition. Tr. 186. Plaintiff self-reported to physicians that she was perhaps suffering from hydrocephaly, and the administrative law judge did not err in failing to consider this alleged medical condition in light of the fact that there was no medical evidence to support the conclusion.

With regard to the sleep apnea, there are records that Plaintiff at one point suffered from sleep apnea, not unlikely given her obesity. However, on July 3, 2003, Plaintiff underwent a sleep study and improvement in her sleep was noted with the use of a continuous positive airway pressure, CPAP, machine. Tr. 164. There are no records

indicating that the apnea was not resolved by the CPAP machine that Elliott R. Schwartz, D.O., ordered for her to try. Tr. 163. Plaintiff did not seek any additional treatment for the alleged apnea, and the absence of any indication that the apnea continued to interfere with Plaintiff's function, the administrative law judge did not err in failing to attribute any limitations to Plaintiff's sleep apnea.

As to her depression, Plaintiff is taking Effexor, an anti-depressant medication prescribed by her primary physician. Plaintiff testified that she was seeing a counselor to help her with the stress she was experiencing, following a self-referral. Tr. 210. She had not been referred to a medical specialist nor prescribed any additional drugs to treat her depression. Plaintiff failed to provide the administrative law judge with any evidence that her depression limited her ability to work, and accordingly, the administrative law judge did not err in failing to consider her alleged depression in assessing her residual functional capacity. Additionally, there is no indication in any of Plaintiff's medical records of any limitations caused by the alleged depression, which is apparently controlled effectively by the Effexor.

Plaintiff also complains because the administrative law judge failed to order a consultative examination as requested by her attorney at the hearing. Counsel's comments at the hearing support the conclusion that many of Plaintiff's alleged impairments were without support.

> Judge, what I want to mention to you was that in this file, Social Security has not sent Ms. Fagan out for a physical examination. They have a residual functional capacity assessment in the file, but they didn't send her to a doctor. So there's nothing in the file except what we brought in today, showing anything wrong with her back and I would ask the Court to consider a consultative exam for Ms. Fagan because I think that would

> support our position that she has a bad back, and I think it would also help the Court determine if, in fact, this polycystic ovary problem is serious or not.

Tr. 209-10. The administrative law judge said he would consider the request, but ultimately issued his decision without ordering an examination. Tr. 210-11.

An administrative law judge "has broad latitude in ordering a consultative examination." <u>Diaz v. Secretary of Health and Human Servs.</u>, 898 F.2d 774, 778 (10th Cir. 1990). "[W]here there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim." <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1166 (10th Cir. 1997) (citations omitted). The administrative law judge "does not have to exhaust every possible line of inquiry," as "[t]he standard is one of reasonable good judgment." <u>Hawkins</u>, 113 F.3d at 1168. In this case, the Plaintiff testified about certain medical conditions for which there was no medical documentation, including her hernia and possible hydrocephaly. Although it would have been within the administrative law judge's province to order a consultative examination, the facts of Plaintiff's case did not mandate that he request such an examination.

### **RECOMMENDATION**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the final decision of the Commissioner of the Social Security Administration be affirmed. The

parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by April 19th, 2006, in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 72.1. This Report and Recommendation disposes of all of the issues referred to the undersigned Magistrate Judge in the captioned matter.

Entered this 30th day of March, 2006.

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE